**NORTH OLMSTED CHAMBER OF COMMERCE, et al., Plaintiffs,**

v.

**CITY OF NORTH OLMSTED, Defendant.**

**No. 1:98 CV 0810.**

United States District Court,
N.D. Ohio,
Eastern Division.

June 26, 2000.

Robert J. Fogarty, Rob M. Kochis, Thomas Andrew Cunniff, Hahn, Loeser & Parks, Cleveland, OH, for Plaintiffs.

Michael R. Gareau, George Hudson Carr, James M. Dubelko, Careau & Dubelko, North Olmstead, OH, Barry M. Bryon, Law Offices of Barry M. Bryon, Willoughby, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

NUGENT, District Judge.

This matter comes before the Court on Defendant's Motion for Clarification (Doc. # 63). For the reasons set forth below, Defendant's motion is DENIED.

### Procedural History[1]

The Court granted Plaintiffs' Cross–Motion for Summary Judgment in substantial part on January 21, 2000, and permanently enjoined Defendant from enforcing its then-existing sign code, CHAPTER 1163 OF THE CODIFIED ORDINANCES OF NORTH OLMSTED. *See North Olmsted Chamber of Commerce v. City of North Olmsted,* 86 F.Supp.2d 755, 780 (N.D.Ohio 2000). On

---

1. Prior factual and procedural history can be found in *North Olmsted Chamber of Commerce v. City of North Olmsted,* 86 F.Supp.2d 755 (N.D.Ohio 2000).

May 11, 2000, Defendant filed a Motion for Clarification, arguing that the Court's conclusion that Chapter 2506 of the Ohio Revised Code does not provide adequate procedures to minimize the suppression of speech pending judicial review, *id.* at 778, is not "warranted by existing prior restraint law[.]" (Def.'s Mot. at 3.) Plaintiffs filed a Memorandum in Opposition on May 30, 2000.

## Discussion

Plaintiffs' claim of unconstitutional retaliation remains pending in this Court. Thus, because there was no cause for a Federal Rule of Civil Procedure 54(b) certification, the Court's Judgment disposing of all other claims (Doc. # 55) did "not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties." FED. R.CIV.P. 54(b). *See GenCorp, Inc. v. American Int'l Underwriters*, 178 F.3d 804, 811 n. 8 (6th Cir.1999) (stating that unless the district court properly exercises its discretion under Rule 54(b), a partial disposition is not final and an appellate court lacks jurisdiction).

■ However, Defendant has waived its argument on this issue because, pursuant to Federal Rule of Civil Procedure 72(b) and 28 U.S.C. § 636(b)(1), Defendant did not file "specific, written objections" to Magistrate Judge Hemann's determination on this specific issue within 10 days after being served with a copy of the Magistrate Judge's Report and Recommendation. *See* Doc. # 40 (Report and Recommendation)

at 21–23; Doc. # 47 (Def's Objections) at 3–9. *See also North Olmsted*, 86 F.Supp.2d at 777 ("The City did not submit any 'specific written objection' to this portion [the analysis of the prior restraint doctrine] of the Magistrate Judge's Report.").

■ Even if Defendant's argument was not waived, it would fail. The prior restraint law governing what constitutes constitutionally adequate procedural safeguards in licensing schemes is well-settled. As the Court noted in its Opinion, the Supreme Court has long held that a permit scheme implicating expressive activities must contain three procedural safeguards. *See North Olmsted*, 86 F.Supp.2d at 777. Failure to provide for any one of these requirements renders a permit scheme unconstitutional. First, the decision whether to issue a permit must be made within a "specified brief period," and if judicial review is sought, the status quo must be preserved pending "a final determination on the merits." *Freedman v. Maryland*, 380 U.S. 51, 59, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965). Second, the scheme "must also assure a prompt final judicial decision, to minimize the deterrent effect of an interim and possibly erroneous denial of a license." *Id.* Third, a censorship scheme must place the burden of instituting judicial proceedings and proving that the expression is unprotected on the censor.[2] *Id.* at 58, 85 S.Ct. 734; *see also Southeastern Promotions, Ltd. v. Conrad*, 420 U.S. 546, 560, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975).

■ The Court noted that under the second requirement, Defendant's ordi-

---

**2.** In *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 229–30, 110 S.Ct. 596, 107 L.Ed.2d 603 (1990), Justice O'Conner, joined by Justices Stevens and Kennedy, concluded that the third *Freedman* requirement—that the censor bear the burden of going to court and proving the unprotected nature of the speech—is inapplicable when a system of prior restraint does not require a public official to pass judgment on the content of any speech. A different three-Justice plurality, Justice Brennan, joined by Justices Marshall and Blackmun,

concluded that all three of the *Freeman* procedural safeguards must be applied to *any* system of prior restraint. *Id.* at 239, 110 S.Ct. 596. In the matter at hand, regardless of the precedential weight of the O'Connor plurality, all three of the *Freedman* requirements applied because the permit scheme at issue required a public official to pass judgment on the content of speech, that is, the permit scheme was content-based. *See North Olmsted*, 86 F.Supp.2d at 776–77.

nance failed to provide for a prompt judicial determination. *North Olmsted*, 86 F.Supp.2d at 778. An appeal to the architectural review board was held insufficient because the review must be made by "an independent branch of government." *Id.* (quoting *Freedman*, 380 U.S. at 57, 85 S.Ct. 734).[3] In addition, the Court noted that "requiring a rejected applicant to file a civil lawsuit pursuant to Chapter 2506 of the Ohio Revised Code does not provide a constitutionally adequate avenue of prompt judicial review of a decision to restrain protected activity." *Id.* (citation omitted). This is because the process a denied applicant must go through pursuant to Chapter 2506 is too lengthy, does not require a court to rule on the merits within a specified brief period of time, and does not provide adequate procedures to minimize the suppression of speech pending judicial review. *Id.* (citation omitted).

Rather than citing any new or intervening law, Defendant merely complains that "a variety of interpretations are available of this Court's opinion on the application of the prior restraint doctrine," (Def.'s Mot. at 4), and "one interpretation of this Court's ruling could frustrate the entire administrative appeal system under Ohio law[.]" (Def's Mot. at 3.)[4] Defendant's concern is overstated; these procedural requirements only apply to First Amendment prior restraint law. Administrative appeals based on non-expressive activity will not be affected by the Supreme Court's procedural requirements. However, where there is a system of prior restraint on expressive activity, the Supreme Court's requirements are well-settled and mandatory.

In addition, the Sixth Circuit Court of Appeals has recently reenforced the con-

---

**3.** The Court previously read the ordinance as allowing an appeal to the Architectural Review Board. *See North Olmsted*, 86 F.Supp.2d at 776 (citing Ord. § 1163.16(d)). Such an appeal may be permitted as part of the *administrative review process* if delineated by a "specific brief period" of time within which the administrative review process must produce a decision; for example, the ordinance could require that the Building Official (licensor) must make her decision to issue a permit within 5 days and if the permit is denied the Architectural Review Board, sitting in quasi-judicial review, must hear the appeal within 15 days. However, such an appeal does not satisfy the *judicial review* requirements of *Freedman*. An appeal from the administrative review process must be heard by a *judicial* officer and the permit scheme "must assure a prompt final judicial decision." Upon further review, Defendant's description of the procedural scheme for the issuance of a permit, *see* Doc. # 63 at 2, renders the ordinance more problematic than realized because neither the Building Official's decision nor any appeal to an administrative review board—which evidently, according to Defendant, does not exist—is required to be arrived at via a quasi-judicial proceeding. Defendant describes that after the Building Official rules on a permit application, the only avenue available to a rejected applicant would be to appeal the adverse decision to the state court via Chapter 2506 of the Ohio Revised Code. This would be an impossibility. The Supreme Court of Ohio has held that "for an administrative act to be

appealable under R.C. 2506.01 such act must be the product of quasi-judicial proceedings." *M.J. Kelley Co. v. City of Cleveland,* 32 Ohio St.2d 150, 290 N.E.2d 562, 564 (1972). Thus, under Defendant's ordinance, the Building Official's decision is not appealable to the court of common pleas under Chapter 2506 because it is not the product of a quasi-judicial proceeding. In order for an administrative decision (from either the Building Official or an administrative appeals board) to be appealable under Chapter 2506, the decision must be a final order arrived at via "quasi-judicial proceedings", *i.e.,* there must be a requirement for notice, hearing, and the opportunity for the introduction of evidence. *Id.* at 563.

**4.** Defendant also puts forth the bizarre argument that the Court's Opinion can be interpreted to read that "procedural safeguards are only necessary when a permit scheme contains content-based references or impermissible discretion." (Def's Mot. at 3–4.) The Court's Opinion clearly reads that when a system of prior restraint vests a licensing authority with unbridled discretion, the system is unconstitutional. *North Olmsted*, 86 F.Supp.2d at 777. In addition, the Court clearly stated that in order to avoid constitutional infirmity, a permit scheme implicating expressive activity "must contain" the constitutionally-required procedural safeguards. *Id.* at 777–78.

stitutionally-mandated "timely review" requirements. In *Nightclubs, Inc. v. City of Paducah*, 202 F.3d 884 (6th Cir.2000), the Sixth Circuit evaluated the availability of an appeal to a Kentucky state court from an adverse licensing decision:

Kentucky law does not in any way limit the time for furnishing transcripts, conducting a court hearing, or rendering a judicial decision.

This procedure for judicial review contains an even greater potential for indefinite delays than the Memphis scheme found unconstitutional in *East Brooks Books, Inc. v. City of Memphis*, 48 F.3d 220 (6th Cir.1995) [holding a five-month delay impermissible]. In that case, Tennessee law expressly authorized judicial review of administrative decisions, but no time limits were placed on the city's obligation to provide an administrative transcript. *Id.* Moreover, although the appeal would have had 'precedence over other litigation,' there was no assurance that the Tennessee court would have resolved the appeal in a timely manner. *Id.* We noted that under Supreme Court case law, judicial review processes with 'potential delays of over five months are impermissible.' Kentucky law fails to guarantee judicial review of [the City's] licensing decision within any particular period of time, let alone within five months.

The defendants argued, and the District Court concluded, that the requirement of prompt judicial review is satisfied because an aggrieved applicant or licensee may seek preliminary injunctive relief soon after filing an original action in Kentucky court. This argument both misinterprets a long line of legal precedent in the area of prior restraints and minimizes the importance of the First Amendment freedoms at stake. As previously discussed, *Freedman, FW/PBS,* and *East Brooks Books* require an assurance of prompt judicial review; a theoretical possibility of expeditious judicial review is not constitutionally suffi-

cient. A guarantee of prompt judicial review is necessary 'because undue delay results in the unconstitutional suppression of protected speech.' *FW/PBS,* 493 U.S. at 228, 110 S.Ct. 596.

*Id.* at 891–92.

The Sixth Circuit held that "a licensing scheme must reasonably ensure a prompt judicial determination, and not mere access to judicial review." *Id.* at 892 (citing cases). Recognizing that only a state legislature has the power to pass legislation requiring state courts to resolve certain types of cases within a particular period of time, the court noted that an ordinance could provide that a license will issue if a reviewing court fails to reach a decision within a reasonably brief period of time; a city could issue provisional licenses to those businesses that seek judicial review of license denials; and, cities could petition their state legislatures to pass laws that would obligate state courts to resolve these appeals within a reasonably short period of time (as exists for speedy trials, sexual abuse cases, and additional indictment cases). *Id.* at 894 & n. 10.

The Sixth Circuit's holding applies squarely to Chapter 2506 of the Ohio Revised Code. In addition, several Courts in the Northern District of Ohio have specifically held that Chapter 2506 does not satisfy the minimum constitutional procedural safeguards. *See North Olmsted Chamber of Commerce v. City of North Olmsted,* 86 F.Supp.2d 755, 778 (N.D.Ohio 2000); *J.L. Spoons, Inc. v. City of Brunswick,* 49 F.Supp.2d 1032, 1039 (N.D.Ohio 1999); *J.L. Spoons, Inc. v. City of Brunswick,* 18 F.Supp.2d 775, 779 (N.D.Ohio 1998); *Avenue Grille, Inc. v. Rootstown Township,* 5:94 CV 0067 (N.D.Ohio 1995); *Cleveland's P.M. on the Boardwalk v. City of Cleveland,* 1:92 CV 1412 (N.D.Ohio 1992), *vacated pursuant to settlement; Cascade News, Inc. v. City of Cleveland,* 1:92 CV 0758 (N.D.Ohio 1992). *See also BJS No. 2, Inc. v. City of Troy,* 87 F.Supp.2d 800 (S.D.Ohio 1999).

Under a proper ordinance, there should be no reason for undue delay. The Supreme Court is concerned that licensing or permit schemes will (1) give unbridled discretion to a licensing official, and/or (2) lack procedures that will ensure the prompt issuance of a license and prompt judicial review. Defendant's sign ordinance suffered from both of these defects. When a permit applicant complies with a content-neutral ordinance, a sign permit must be issued in a prompt manner. When a permit is denied, there must be safeguards to ensure a prompt judicial decision. For example, when a city denies a sign permit, it could issue a provisional permit for the sign, with the written understanding that if a court rules in favor of the city, the sign will come down at the owner's expense. Not many permit applicants will take this gamble with a well-written ordinance.

Supreme Court, Sixth Circuit, and Northern District of Ohio precedent support the Court's conclusion that "the process a denied applicant must go through pursuant to Chapter 2506 is too lengthy, does not require a court to rule on the merits of an appeal within a specified period of time, and does not provide adequate procedures to minimize the suppression of speech pending judicial review." *North Olmsted,* 86 F.Supp.2d at 778. Thus, by relying on Chapter 2506 to be a rejected applicant's means of a prompt judicial determination, Defendant's permit scheme failed to provide for the constitutionally-mandated procedural safeguard of a prompt final judicial decision. In addition, Defendant's ordinance also failed to provide for the other required procedural safeguard: a "specified brief period" within which the decision to issue a permit must be made; maintenance of the status quo pending judicial review; and, placing "the burden of instituting judicial proceedings and proving that the expression is unprotected on the censor." *Id.* In sum, Defendant's assertion that the Court erred as a matter of law lacks merit.

**Conclusion**

For the reasons stated above, Defendant's Motion for Clarification (Doc. # 63) is DENIED.

IT IS SO ORDERED.