[Cite as *State ex rel. Henderson v. New Richmond*, 2020-Ohio-4875.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY

| | | |
|---|---|---|
| STATE OF OHIO EX REL. FLOYD HENDERSON, et al., | : | |
| | : | CASE NO. CA2019-11-089 |
| Appellant, | : | O P I N I O N |
| | : | 10/13/2020 |
| - vs - | : | |
| | : | |
| THE VILLAGE OF NEW RICHMOND, OHIO, et al., | : | |
| | : | |
| Appellees. | | |

ADMINISTRATIVE APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2019CVF00068

Lazarus & Lewis, LLC, Gary R. Lewis, Cincinnati Club Building, Suite 915, 30 Garfield Place, Cincinnati, Ohio 45202, for appellant

Schroeder, Maundrell, Barbiere & Powers, Scott A. Sollmann, 5300 Socialville-Foster Road, Suite 200, Mason, Ohio 45040, for appellees

**PIPER, J.**

{¶1} Floyd Henderson appeals the decision of the Clermont County Court of Common Pleas, which dismissed his claims against the village of New Richmond, Ohio ("the Village") and other defendants. For the reasons that follow, this court affirms the decision.

{¶2} The following facts derive from Henderson's pleading and its attachments and

for purposes of this appeal are presumed true. In 1987, the New Richmond Police Department ("NRPD") hired Henderson as a patrolman. In 2011, NRPD promoted Henderson to the position of police corporal, which was a supervisory position.

{¶3} Henderson remained the only corporal employed by NRPD until November 27, 2018, when the council for New Richmond ("Village Council") voted to adopt Ordinance 2018-18, which authorized the immediate elimination of the position of corporal within NRPD. The ordinance, attached to Henderson's complaint, explained the reasoning behind its passage, which was that the corporal position had originally been intended to act as NRPD's primary investigator but that NRPD's patrol officers had been conducting their own investigations. In addition, the NRPD currently had a total of three supervisory positions to supervise three full-time patrol officers and the police chief informed Village Council there was no practical need for three supervisors. Finally, eliminating the corporal position would result in a cost savings. The ordinance further resolved that the Village would offer the employee currently filling the corporal position a full-time patrolman position.

{¶4} Two weeks after the ordinance's adoption, the police chief asked to meet with Henderson and give him a letter. The letter, attached to the complaint, was addressed to Henderson from the police chief and informed Henderson that pursuant to Ordinance 2018-18, the position of corporal had been eliminated and that the Village was offering him a full-time patrolman position. The offered rate of pay for the patrolman position was a reduction of $3.09 from Henderson's hourly wage as a corporal, resulting in a salary reduction of approximately $6,760. The document ended with a signature line and informed Henderson that he if accepted the offer, he would need to sign the document and return it to the police chief by December 20, or 9 days later.

{¶5} On December 20, Henderson met with the police chief and returned the offer letter. On the signature line, Henderson wrote: "I respectfully object to the terms and

conditions of this letter and are protesting same." Henderson told the police chief that he was represented by counsel and provided the chief with his lawyer's business card.

{¶6} The police chief told Henderson that if did not sign the letter he would no longer be an officer with NRPD. Henderson did not sign the letter. The next day, December 21, 2018, the Village's law director sent Henderson a letter memorializing that Henderson's position had been eliminated by Ordinance 2018-18, that Henderson had not accepted the Village's offer of employment as a patrolman and therefore, effective as of the close of business December 20, 2018, Henderson was no longer an employee of NRPD.

{¶7} On January 22, 2019, Henderson filed a pleading styled "consolidated notice of appeal and verified complaint" against the Village, its administrator, mayor, interim police chief, and the six members of the Village Council. With regard to the "notice of appeal," the pleading indicated it was an "administrative-related appeal" from a "final order" of the Village. Henderson attached the "final order" to the complaint, which was the Village law director's December 21, 2018 letter. The pleading further indicated that Henderson's appeal was pursuant to R.C. Chapters 119, 124, 2505, and 2506.

{¶8} The complaint portion of the pleading listed five causes of action. Count one was for a writ of mandamus, alleging that Henderson had a clear legal right to immediate reinstatement to the rank of corporal and its attendant employment benefits and that Henderson had no adequate remedy at law. Count two was titled "Violations of Law" and indicated that Henderson had the right to continued employment with NRPD until he was "removed for cause, in the manner provided by Ohio law." Henderson further alleged that the passage of Ordinance 2018-18 violated the statutes of Ohio, although the pleading did not specify which statutes were violated.

{¶9} Counts three and four alleged facial and as-applied challenges to Ordinance 2018-18, alleging violations of the United States Constitution, the 14th Amendment, 42

- 3 -

U.S.C. 1983, and procedural due process. Henderson averred that he had a property interest in continued employment with NRPD and was entitled to due process of law before being deprived of his employment. Henderson further averred that Ordinance 2018-18 was unconstitutional because it did not provide him with a hearing or other meaningful opportunity to be heard. Finally, in count five, Henderson asked the court for a declaratory judgment. Henderson alleged a justiciable controversy existed between him and the defendants and requested that the court issue a "judicial determination construing the legal relationships between the parties."

{¶10} Henderson asked the court to order his reinstatement as a NRPD corporal and to make him whole with respect to various employment-related benefits. Henderson further requested damages and attorney fees.

{¶11} The defendants moved for judgment on the pleadings. With respect to the appeal portion of the pleading, the defendants argued that Henderson was not entitled to appeal the adoption of Ordinance 2018-18 under any of the cited statutory provisions. The defendants further argued that Henderson was not entitled to relief on any of the counts set forth in the complaint.

{¶12} After the matter was fully briefed, the trial court issued a decision granting judgment on the pleadings. The court agreed that Henderson had no statutory right or other basis to appeal Ordinance 2018-18. With respect to Henderson's request for a writ of mandamus and "violations of law," the court found that Henderson had not established a clear legal right to continued employment as a corporal with NRPD or that the Village violated any laws in the adoption of Ordinance 2018-18. With respect to the two counts alleging violations of due process, the court concluded that Henderson could not demonstrate any property interest in his former position with NRPD, and thus could not demonstrate that he had been unfairly deprived of due process of law when his position was

eliminated. Finally, the court found that Henderson was not entitled to a declaratory judgment because he could not demonstrate any justiciable issue.

{¶13} Henderson appeals, raising one assignment of error:

{¶14} THE TRIAL COURT SUBSTANTIALLY ERRED TO THE PREJUDICE OF HENDERSON IN GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS.

{¶15} Henderson divides his assignment of error into five issues for review. Henderson contends that his appeal was authorized by statute and case law and that his termination was unlawful pursuant to various Revised Code provisions. For purposes of his due process claims, Henderson contends that he had a property right in his former position. Alternatively, Henderson claims to have a clear legal right to reinstatement to the rank of corporal, no adequate remedy at law, and therefore is entitled to a writ of mandamus.

{¶16} The trial court granted judgment on the pleadings pursuant to Civ.R. 12(C), which provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings." Civ.R. 12(C) motions are specifically for resolving questions of law. *Whaley v. Franklin Cty. Bd. of Commrs.*, 92 Ohio St.3d 574, 581 (2001). Therefore, this court's standard of review is de novo. *Cyrus v. Home Depot USA, Inc.*,12th Dist. Clermont No. CA2007-09-098, 2008-Ohio-4315, ¶ 18.

{¶17} When considering a Civ.R. 12(C) motion for judgment on the pleadings, the trial court is restricted to consider only the allegations in the pleadings and must construe as true all the material allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are in favor of the nonmoving party. *Whaley* at 581. Dismissal is appropriate under Civ.R. 12(C) when, after construing all material allegations in the complaint in favor of the nonmoving party, the court finds beyond doubt that the plaintiff can prove no set of facts in support of its claim that would entitle it to relief. *State ex rel. Midwest*

*Pride IV, Inc. v. Pontious*, 75 Ohio St.3d 565, 570 (1996).

<u>Henderson's Appeal pursuant to R.C. Chapters 2505 and 2506</u>

{¶18} Henderson argues that he was entitled to appeal the Village Council's elimination of the NRPD corporal position under R.C. Chapters 2505 and 2506 and that the law director's letter constituted the final order from which he timely appealed pursuant to R.C. 2506.01(A). R.C. Chapter 2506 authorizes appeals to the common pleas court of the administrative decisions of political subdivisions. *Auxier Trucking v. Tate Twp. Bd. of Trustees*, 12th Dist. Clermont No. CA2001-01-012, 2001 WL 1652078, *3 (Dec. 24, 2001).[1] However, "in order for an administrative act to be appealable under R.C. 2506.01 such act must be the product of quasi-judicial proceedings." *M.J. Kelley Co. v. Cleveland*, 32 Ohio St.2d 150, 153 (1972). The statute "does not provide for appeals from legislative bodies or from resolutions of administrative bodies promulgated in a delegated legislative capacity." *Tuber v. Perkins*, 6 Ohio St.2d 155, 156 (1966).

{¶19} Thus, "[t]he decision being appealed must have resulted from an exercise of administrative power resulting from a quasi-judicial proceeding." *Ohio Multi-Use Trails Assn. v. Vinton Cty. Commrs.*, 4th Dist. Vinton No. 08CA670, 2009-Ohio-2061, ¶ 9. A court does not have subject-matter jurisdiction to hear appeals based on legislative functions. *Id*. The test for determining whether an action of a governmental body is legislative or administrative is "whether the action taken is one enacting a law, ordinance or regulation, or executing or administering a law, ordinance or regulation already in existence." *Donnelly v. Fairview Park*, 13 Ohio St.2d 1 (1968), paragraph two of the syllabus.

{¶20} Village Council adopted Ordinance 2018-18, a new ordinance, which

---

1. R.C. 2506.01(A) provides that "every final order, adjudication, or decision of any officer, tribunal, authority, board, bureau, commission, department, or other division of of any political subdivision of the state may be reviewed by the court of common pleas * * *."

eliminated the position of corporal within NRPD. The reasons set forth for the ordinance, including cost savings and streamlining the operations of NRPD, are all legitimate matters of concern for a village legislative body. In passing the ordinance, the Village Council neither executed nor administered an existing ordinance. The Village Council's adoption of Ordinance 2018-18 also did not involve quasi-judicial proceedings. There is no indication in the record that Ordinance 2018-18 was in any way related to employee discipline. In fact, the ordinance offered continued employment to the affected employee through the offer of a patrolman position. Accordingly, the adoption of Ordinance 2018-18 was a legislative act that is not an appealable "final order, adjudication, or decision" under R.C. 2506.01(A).

{¶21} In his appellate brief, Henderson presented no argument as to why this court should consider the adoption of Ordinance 2018-18 as anything other than a legislative act. Instead, he simply refers to it as an administrative decision. For the reasons set forth, Ordinance 2018-18 was not an administrative decision.

{¶22} However, Henderson cites several cases allegedly supporting the argument that he could appeal the elimination of his position under R.C. 2506.01. Henderson first cites *Williams v. Yellow Springs*, 2d Dist. Greene No. 2004 CA 130, 2005-Ohio-5011. There, the court held that a discharged police officer could appeal the decision of a village appeals board, which affirmed his discharge by the village manager. *Id.* at ¶ 21. *Williams* is distinguishable as it involved a terminated employee and an administrative decision resulting from a quasi-judicial proceeding, neither of which is present in this case.

{¶23} Henderson next cites *Goins v. Village of New Boston*, 4th Dist. Scioto No. 00CA2701, 2000 WL 1800519 (Nov. 22, 2000) and *Stephen v. Village of Barnesville*, 7th Dist. Belmont No. 97 BA 12, 1999 WL 669491 (Aug. 20, 1999). These cases are also distinguishable as both involved the suspension of an officer for cause pursuant to R.C. 737.19(B), which statute addresses suspension and removal of village police officers for

cause. As will be discussed in more detail later in this opinion, R.C. 737.19(B) is inapplicable because Henderson was not suspended or removed for cause. His position was eliminated by legislative act.

{¶24} Henderson also cites *Fraternal Order of Police of Manchester v. Village of Manchester*, 4th Dist. Adams Nos. 368 and 371, 1981 WL 2657 (Dec. 15, 1981), for the proposition that R.C. Chapter 2506 authorized an appeal of a village's decision to eliminate the positions of certain police officers for budgetary reasons. The *Manchester* decision does indicate that the officers' appeal was authorized by R.C. 2506. *Id.* at *4. While the court did not explain its rationale, it cited *In Re Locke*, 33 Ohio App.2d 177 (4th Dist.1972) and *Atwood v. Judge*, 63 Ohio App.2d 94 (7th Dist.1977). *Id.* Upon review, neither of these cases stand for the proposition that a village police officer may appeal the elimination of his position by legislative act pursuant to Chapter 2506. Additionally, both those cases involved city employees with greater protections through the civil service system than a village employee. *Manchester* is not persuasive.

{¶25} Finally, Henderson argues that "there is an issue as to whether the Law Director of New Richmond had the authority to terminate Henderson's employment by letter dated December 21, 2018." In this regard, Henderson cites *Fogle v. Village of Carlisle,* 12th Dist. Warren No. CA2000-04-037, 2000 WL 1819118 (Dec. 11, 2000). The issue in that case was whether a village law director had authority under a village charter to accept a police officer's resignation. *Id.* at *2. This case does not involve the administrative application of a village charter. Furthermore, in this case, the law director did not terminate Henderson's position. Henderson's position was eliminated by Village Council's adoption of Ordinance 2018-18. The law director's letter informed Henderson of that ordinance and confirmed that Henderson had not accepted the Village's offer of employment. Accordingly, this court finds no error in the trial court's determination that Henderson had no right to

appeal Ordinance 2018-18 pursuant to R.C. Chapters 2505 and 2506.

Appeal Pursuant to R.C. Chapter 737 and R.C. 124.34 and 119.12

{¶26} Next, Henderson argues that the termination of his employment violated provisions of R.C. Chapter 737 and his right to appeal derived from those violations. Henderson argues that his removal violated R.C. 737.17, which he implies provides the exclusive grounds for the removal of a village police officer without cause. R.C. 737.17 provides:

> All appointments [of village police officers] * * * shall be for a probationary period of six months' continuous service, and none shall be finally made until the appointee has satisfactorily served his probationary period. At the end of the probationary period the mayor shall transmit to the legislative authority of the village a record of such employee's service with his recommendations thereon and he may, with the concurrence of the legislative authority, remove or finally appoint the employee.

{¶27} Henderson argues that the elimination of the corporal position through Ordinance 2018-18 violated this statute because it provides that only the mayor may remove him. However, this court interprets R.C. 737.17 as granting the village mayor a discretionary right, with the agreement of the village council, to either appoint or remove a village police officer at the end of the officer's six-month probationary period. Henderson was not a police officer at the end of his six-month probationary period and had been a village officer for decades. Thus, this statute is inapplicable to the present case.

{¶28} R.C. 737.17 also does not expressly or impliedly limit the statutory authority of a village council in making employment decisions with respect to village employees. In this regard, R.C. 731.10 provides such authority: "[t]he legislative authority may provide such employees for the village as it determines, and such employees may be removed at any regular meeting by a majority of the members elected to such legislative authority." *Accord Toth v. Elmwood Place*, 20 Ohio App.3d 188 (1st Dist.1984) (holding that a village council

has the authority under R.C. 731.10 to remove police officers to relieve a financial emergency). Consequently, this court does not find that the Village Council's adoption of Ordinance 2018-18 violated R.C. 737.17.

{¶29} Henderson next argues that the elimination of his position violated R.C. 737.19, which outlines the procedures when the village marshal intends to suspend or remove deputies, officers, or employees of a village police department for cause. The statute provides that the village marshal "has the exclusive right to suspend any of the deputies, officers, or employees in the village police department who are under the management and control of the marshal for incompetence, gross neglect of duty, gross immorality, habitual drunkenness, failure to obey orders given them by the proper authority, or for any other reasonable or just cause." R.C. 737.19(B). The statute further prescribes various procedures following the suspension, including removal of the officer from the police department after approval by the mayor, and the right to appeal to the village legislative authority. *Id.*

{¶30} As previously stated, R.C. 737.19 is not applicable to this case and does not provide Henderson with a right to appeal the adoption of Ordinance 2018-18. Henderson was not suspended for cause by the police chief and he was not removed from the department by the village mayor. Henderson's former position was eliminated by a legislative act of the Village Council, which this court has determined was not appealable.

{¶31} Next, Henderson argues that his appeal was authorized under R.C. 124.34 and 119.12. But neither statute provides Henderson with any right to appeal Ordinance 2018-18. R.C. 124.34 relates to civil service employees and is inapplicable to village employees. *Doughton v. Village of Mariemont*, 16 Ohio App.3d 382 (1st Dist.1984), citing *Christensen v. Hagedorn*, 174 Ohio St. 98 (1962); *State ex rel. Heffernan v. Serp*, 125 Ohio St. 87, 88 (1932). R.C. 119.12 governs appeals from agency orders denying or revoking

- 10 -

various licenses or admissions to examinations. There is no agency in this case and there are no agency orders to be appealed. Accordingly, Henderson has not established any right to appeal based on R.C. Chapter 737, or R.C. 124.34 and 119.12.

Due Process Claims

{¶32} In support of his claims for due process violations, Henderson argues that he had a property right to his former position with NRPD. Henderson does not cite any statutory authority that imbued him with such a right. Instead he argues that he had certain rights as a civil service employee. Though as this court just noted, Henderson was not in the civil service system.

{¶33} Henderson also argues that the mayor and police chief violated his substantive and procedural rights by failing to follow the procedures set forth in R.C. 737.19. Though this court has already determined that R.C. 737.19 is inapplicable to this case, another court has examined and rejected this same argument in the context of a due process claim.

{¶34} In *Kraven v. Village of Oakwood*, N.D. Ohio No. 1:12CV01795, 2013 WL 3893340 (July 25, 2013), a village eliminated the position of police lieutenant for budgetary reasons. *Id.* at *3. The officer argued that R.C. 737.19(B) conferred him with a property interest in his position. *Id.* at *4. In rejecting this argument, the court wrote:

> Plaintiffs are mistaken in their assertion that O.R.C. § 737.19(B) creates a property interest upon which their due process claims may rely, because Ohio law establishes that a public employee does not have a property interest in a position that is eliminated for budgetary reasons. *State ex. rel. Robinson v. Dayton*, 984 N.E.2d 353, 358 (Ohio App.2012). A civil service employee who by statute may be terminated only for cause may have a property interest in his or her continued employment in a position. However, that employee does not have a property interest in the existence of the position.

*Id.* For the same reasons, this court agrees that R.C. 737.19(B) did not provide Henderson with a property interest in his former position for purposes of a due process claim. This court

finds no error in the trial court's dismissal of Henderson's counts premised on alleged due process violations.

### Henderson's Entitlement to a Writ of Mandamus and Appeal Under Chapter 2506

{¶35} In order to sustain his claim for a writ of mandamus, Henderson must have pled facts sufficient to show that (1) that he has a clear legal right to the relief prayed for, (2) that the defendants are under a clear legal duty to perform the acts, and (3) that Henderson has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28, 29 (1983). Henderson's complaint indicated that he had a "clear legal right to immediate reinstatement" but failed to cite to any authority for that right. His appellate brief provides no further detail as to the basis of this claimed right. Presumably, Henderson bases his argument on the alleged property right conferred by R.C. 737.19(B). This court finds that Henderson has not articulated any clear legal right to reinstatement to NRPD and therefore failed to properly plead a claim in mandamus.

### Declaratory Judgment

{¶36} Finally, Henderson argues that he was entitled to declaratory relief and that an actual controversy existed between him and the defendants because he had a property interest in his former position. However, Henderson failed to establish that he had any such property interest. For the foregoing reasons, this court overrules Henderson's sole assignment of error.

{¶37} Judgment affirmed.

M. POWELL, P.J., and S. POWELL, J., concur.